tioner herein, she has given testimony which satisfies my mind that she has had experience in the care and nurture of children; she having practically been the guardian of infant children who were her nephews and nieces, bringing them up and caring for them for several years. It is true that she and Mrs. Traynor executed consent that Mr. Hutchinson should be appointed general guardian; but I know no reason why that should be binding forever, and circumstances or conditions arising afterward certainly would justify the institution of a proceeding to remove a guardian, notwithstanding the execution of such a consent. In making this decision I rely upon Matter of Jacquet, 40 Misc. Rep. 575, 82 N. Y. Supp. 986, a case quite similar to the present matter. In that case, also, the father was a Catholic; but the mother of the children declared herself to be a Protestant, and expressed the wish that the children be educated in the Protestant faith. The court there held that it must decide as to whether its powers should be used for the rearing of the children under Catholic or Protestant influence, citing an English case as an authority that the guardian should have a sacred regard to the religion of the father in dealing with the child; that the father has the absolute right in his lifetime to decide what religious education the child shall receive, and after his death the guardians are to follow out his wish. This case was decided by the surrogate of Monroe county. It is very much in point here, and the surrogate said in conclusion:

"Upon the preponderance of the evidence as presented here, principle and authority impel this court to commit these children to Catholic guardianship until maturity shall give to each that absolute freedom of choice of religious belief that his judgment and conscience approve which is the birthright of his American citizenship."

My attention has also been called by the attorney for the petitioner to Matter of Crickard, 52 Misc. Rep. 63, 102 N. Y. Supp. 440, which seems to lay down the same rule. I believe that welfare of infants is best promoted by bringing them up in the faith of their fathers.

Accordingly I will revoke William Hutchinson's letters of guardianship of the person of these infants, and I will appoint in his place as guardian of the person their aunt, their father's sister, Rose McKelvey, upon her giving a bond in the penal sum, in the case of each infant, of $250.

Decreed accordingly.

---

(60 Misc. Rep. 28.)

### In re BENNETT'S WILL.

#### (Surrogate's Court, Kings County. June, 1908.)

EXECUTORS AND ADMINISTRATORS—DISQUALIFICATION.

Though a question exists as to the ultimate disposition of the estate, in the determination of which the interests of the children of the executors will be adverse to the interest of certain claimants, it is no ground for the withholding of the letters from the executors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 32.]

In the matter of the probate of the will of Adolphus Bennett. Application to withhold letters testamentary denied.

Charles F. Moody (Michael Furst, of counsel), for petitioner.
James C. Church, for next of kin.

KETCHAM, S. This is an application that letters testamentary be withheld from the persons appointed as executors in the decedent's will. The decedent and his wife died under circumstances which leave the order of their deaths doubtful. The will of the husband left his entire estate to the wife, without alternative disposition in case the husband survived her. In the will of the wife the children of the two executors of the husband's will are the residuary legatees. It follows that, if the wife was the first to die, the provision of the husband's will in her behalf lapses, and the husband's estate will pass to his next of kin, while, if the wife survived the husband, his estate, through her, will pass to the children of these executors.

It is therefore claimed by the next of kin of the husband that the executors should not be allowed to administer an estate in which the interests of their children will be necessarily arrayed against their duties as executors. It is freely conceded that the executors are capable, experienced, and honorable, and the only suggestion against their qualifications is that:

"The court should prevent them from being placed in a situation where there are temptations to misconduct."

To allow them to assume the office to which the decedent has named them will subject them to no greater moral stress than is generally imposed upon persons to whom the care of the property of others is committed. The evil which is feared in this case takes the form of a supposed temptation to the executors to so deal with the subject of their trust that it will be sacrificed to the profit of their children. Any act on their part which would tend to this result must involve a conscious dishonesty, for nothing short of a deliberate intention to betray their trust would be efficient. If the mere apprehension that gentlemen of confessed sincerity will corruptly betray their trust to the advantage of others is to serve as a reason for excluding them from the opportunity of dishonor, then under a like rule few executors or administrators would be permitted to assume their duties. Nearly all of these officers have the control of moneys or property readily convertible into money.

Men are more prone to sin for their own benefit than to unselfishly violate their consciences for the good of others. The danger that an executor would steal for himself is greater than any fear that he would do an equally immoral act for the enrichment of another, even if that other were his own child. If these executors are to be set aside merely in order that they may not be led into temptation, then all executors, who, if they take office, must meet a temptation even stronger, will have to be excluded from office upon the same suspicion. It is intolerable that, because a man is about to be tempted, he is about to fall. Opportunity to sin is not the basis for a finding of fact that the sin is to be expected. Executors are daily found with duty on one hand and selfish interest on the other. Executors who claim the personal ownership of the assets which are claimed by others to be-

long to the estate, those who maintain personal claims against the estate in their charge, surviving partners who are also executors, trustees who hold for the lives of their wives or children against remaindermen who are strangers to their affection, would all be under the same conjectural reproach which is sought to be fastened upon the executors at bar.

There is no such legal and sufficient objection as the statute contemplates, and the motion should be denied.

Decreed accordingly.